IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MOSES HOOKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:10-CV-999-WKW |
| | ) [WO] |
| | ) |
| ACCEPTANCE LOAN COMPANY, INC., | ) |
| *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Moses Hooks filed a Complaint (Doc. # 1) against Defendants Acceptance Loan Company, Inc. ("Acceptance Loan"), Covington Credit of Alabama, Inc. ("Covington Credit"), and Equifax Information Services LLC ("Equifax"), alleging three counts. Plaintiff brought one count under the Fair Credit Reporting Act ("FCRA") against Equifax (Count I) and two counts against Acceptance Loan and Covington Credit for willful violation of the Bankruptcy Code's § 524(a) discharge injunction for attempting to collect a discharged debt (Count II) and for reporting discharged debts on Plaintiff's credit reports (Count III). The FCRA claim against Equifax was dismissed on February 17, 2011, and, thus, Equifax is no longer a defendant in this action. (Doc. # 23.) Under submission are Acceptance Loan's and Covington Credit's respective motions to compel arbitration on Counts II and III.

(Docs. # 8, 17.) Upon consideration of the parties' briefs and the relevant law, the motions to compel arbitration are due to be denied and Plaintiff's complaint dismissed, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I. JURISDICTION AND VENUE

Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331. Personal jurisdiction and venue are not disputed, and there are adequate allegations in support of both.

## II. STANDARDS OF REVIEW

**A.    The Federal Arbitration Act**

Pursuant to the Federal Arbitration Act ("FAA"), a written arbitration provision in a "contract evidencing a transaction involving [interstate] commerce" is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA evinces a "liberal federal policy favoring arbitration agreements." *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286, 1288 (11th Cir. 2005) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *see also Picard v. Credit Solutions, Inc.*, 564 F.3d 1249, 1253 (11th Cir. 2009) ("The FAA creates a strong federal policy in favor of arbitration."). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25. Accordingly, the

courts "rigorously enforce" arbitration agreements. *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004). The FAA provides that "upon any issue referable to arbitration under an agreement in writing for such arbitration," and "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement," the court "*shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added).

Where a contract contains an arbitration clause, "there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *AT&T Tech. Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 651 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960)). Arbitration is, however, a matter of contract; thus, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am.*, 363 U.S. at 582; *see also Chastain v. Robinson-Humphrey Co., Inc.*, 957 F.2d 851, 854 (11th Cir. 1992). Ultimately, "[t]he question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the

parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT&T Tech. Inc.*, 475 U.S. at 649). In determining which claims are arbitrable, the court looks to the intent of the parties, and in so doing, gives full effect to all provisions in the contract. *Redmon v. Soc'y & Corp. of Lloyds*, 434 F. Supp. 2d 1211, 1218 (M.D. Ala. 2006) (citing *Bullock v. United Benefit Life Ins. Co.*, 165 F. Supp. 2d 1259, 1261 (M.D. Ala. 2001)).

**B.    Rule 12(b)(6)**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2). When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

### III.  FACTS

In 2009, Plaintiff filed a Chapter 7 bankruptcy petition for debt relief, *see In re Moses Hooks*, No. 09-33043 (Bankr. M.D. Ala. Nov. 4, 2009), and was discharged on

May 21, 2010.  (Compl. ¶ 8.)  Defendant Acceptance Loan was a creditor holding a secured claim, and Covington Credit was a creditor holding an unsecured nonpriority claim.  (Compl. ¶¶ 9, 11.)  Both of these debts were discharged, and Plaintiff alleges that Defendants received proper notice of the discharge.  (Compl. ¶¶ 9-12.)

Nevertheless, in this lawsuit, Plaintiff alleges that Acceptance Loan and Covington Credit violated the discharge injunction, *see* 11 U.S.C. § 524(a), by continuing to attempt to collect the discharged debts and by continuing to report – on at least one occasion – Plaintiff's debts to Equifax, a Credit Reporting Agency, as having a balance due and payable, as opposed to discharged in bankruptcy.  (Compl. ¶¶ 9-12.)  Counts II and III of the Complaint ensued as a result of this alleged conduct.[1]  Plaintiff makes a jury demand, and seeks compensatory and punitive damages, costs and attorney's fees, and other appropriate relief.  (Compl. ¶ 42.)

Relying on the arbitration agreements found within the dispute resolution agreements of the respective loans, Defendants filed the motions to compel arbitration presently at issue.  The identically-worded Arbitration Agreements read:

> (1)  **Agreement to Arbitrate**.  With limited exceptions, you and we agree that any and all disputes, claims, or controversies of any kind and nature between us arising out of or relating to the relationship between us will be resolved through mandatory, binding arbitration.  This

---

[1] Count II asserts that "Defendants have willfully violated . . . the discharge injunction by attempting to collect a debt that arose prior to and was discharged in Plaintiff's bankruptcy case." (Compl. ¶ 30.)  There is little factual support to this claim in the Complaint.

5

> agreement to arbitrate covers claims that (a) arise out of or relate to this Agreement or the Loan Agreement; (b) arise out of or relate to any past transactions or dealings between us; (c) arise out of or relate to any future transactions or dealings between us; and (d) disputes about whether any claims, controversies, or disputes between us are subject to arbitration to the extent permitted by federal law.  Because you and we have agreed to arbitration, **both of us are waiving our rights to have disputes resolved in court by a judge or jury** . . . .

(Arbitration Agreements (Doc. # 8, Ex. 1, at 6; Doc. # 17, Ex. 2, at 2).)

## IV.  DISCUSSION

Plaintiff does not dispute that the affirmative requirements for enforcement of the Arbitration Agreements are present in this case:  (1) a written agreement; (2) a nexus to interstate commerce; and (3) coverage of the claims by the arbitration clause. 9 U.S.C. § 2.  Rather, Plaintiff urges an exception to the otherwise mandatory enforcement of the Arbitration Agreements because his two claims involve alleged violations of the Bankruptcy Code's statutory injunction that is created when a debtor is discharged from bankruptcy.  *See* § 524(a) ("A discharge in a case under this title . . . operates as an injunction . . . .").  In its simplest form, Plaintiff's argument is that the FAA should yield to the Bankruptcy Code in this context.

And indeed, this assertion is the stepping off point of an analysis to determine whether a bankruptcy-related proceeding is subject to an otherwise applicable arbitration clause.  Although "the [FAA], standing alone, [ ] mandates enforcement of agreements to arbitrate[,]" the Supreme Court has observed that "the [FAA]

mandate may be overridden by a contrary congressional command." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226-27 (1987). "In *McMahon*, the [Supreme Court] promulgated a three factor test in order to determine Congress' intent: '(1) the text of the statute; (2) its legislative history; and (3) whether an inherent conflict between arbitration and the underlying purposes [of the statute] exists.'" *In re Elec. Mach. Enter., Inc.*, 479 F.3d 791, 796 (11th Cir. 2007) (quoting *Davis v. S. Energy Homes, Inc.*, 305 F.3d 1268, 1273 (11th Cir. 2002) (citation to and quotation of *McMahon* omitted)). Looking to the first two factors, the Eleventh Circuit "[found] no evidence within the text or legislative history that Congress intended to create an exception to the FAA in the Bankruptcy Code." *Id.* (citing *Mintze v. Am. Gen. Fin. Servs., Inc. (In re Mintze)*, 434 F.3d 222, 231 (3d Cir. 2006)). Thus, in the bankruptcy context, the third factor becomes dispositive: "[W]hether an inherent conflict exists between arbitration and the underlying purposes of the Bankruptcy Code." *Id.* "[T]he burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *McMahon*, 482 U.S. at 226-27.

The first step in addressing whether arbitration inherently conflicts with the Bankruptcy Code is to classify the proceeding sought to be arbitrated as core or non-core. *In re Elec. Mach. Enter., Inc.*, 479 F.3d at 796; *see also Hays & Co. v. Merrill*

*Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1157, 1161 (3d Cir. 1989) (holding that arbitration of certain "non-core adversary proceeding[s] [initiated] in a district court" by the debtor's Chapter 11 Trustee did not "seriously jeopardize the objectives of the [Bankruptcy] Code"). However, the core/non-core distinction is not dispositive. To this court's knowledge, no court of appeals has ever concluded that arbitration of a non-core proceeding would produce an inherent conflict between the FAA and the Bankruptcy Code. At the same time, both the Fifth and Eleventh Circuits have indicated a willingness to compel arbitration over core proceedings when the party opposing arbitration fails to meet its burden of showing that arbitration of the core proceeding inherently conflicts with the Bankruptcy Code. *See In re Nat'l Gypsum Co.*, 118 F.3d 1056, 1067 (5th Cir. 1997) (conceding that the core/non-core distinction is practical, but finding that it is "too broad" and stating that "[i]t is doubtful that 'core' proceedings, categorically, meet the [*McMahon*] standard"); *In re Elec. Mach. Enter., Inc.*, 479 F.3d at 798-99 ("[E]ven if we were to find that EME's claim against Whiting-Turner constitutes a core proceeding, we find that EME did not sustain its burden under *McMahon* to demonstrate that Congress intended to limit or prohibit waiver of a judicial forum for the type of claim that EME brought against Whiting-Turner . . . . Therefore, even if this dispute is in fact core, it is still subject to arbitration.").

The claims asserted in this case by Plaintiff are somewhat difficult to classify as either core or non-core. On the one hand, "[c]ourts have held that actions to enforce the discharge injunction are core proceedings because they call on a bankruptcy court to construe and enforce its own orders." *In re Nat'l Gypsum Co.*, 118 F.3d at 1063 (collecting cases and treatises); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (A court's inherent contempt powers "are governed not by rule or statute but by the control necessarily vested in courts to manage *their own affairs* so as to achieve the orderly and expeditious disposition of cases . . . .") (emphasis added). On the other hand, several courts of appeals have held that there is no independent cause of action to redress violations of the discharge injunction. *See Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 507 (9th Cir. 2002) (declining to find a private right of action for redress of § 524 violations and stating that "contempt is the appropriate remedy and no further remedy is necessary"); *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 422-23 (6th Cir. 2000) ("[W]e have no hesitancy in joining those courts (a clear majority) that have held § 524 does not impliedly create a private right of action."); *see also Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 917 (7th Cir. 2001) (suit for violation of § 524 can be brought only as contempt action).

Confronted with the strong authority that no private cause of action exists for violations of the discharge injunction, Plaintiff states that he "recognizes that the

persuasive authority from other circuits . . . does not [allow for] a private right of action in enforcing section 524 . . . ." (Doc. # 26, at 4.) Nevertheless, Plaintiff cites *Jove Engineering, Inc. v. Internal Revenue Service*, 92 F.3d 1539 (11th Cir. 1996), for the proposition that "the district courts are not without authority to consider and dispose of an action for contempt arising out of a bankruptcy case." (Doc. # 26, at 4.) Plaintiff's reliance on *Jove Engineering* contains fundamental errors. First, Plaintiff misunderstands *Jove Engineering*'s holding. In that case, the Eleventh Circuit concluded that courts (which necessarily includes the district courts since the district courts have primary bankruptcy jurisdiction) could use the statutory contempt power of 11 U.S.C. § 105(a) "to award monetary and other forms of relief for automatic stay violations to the extent such awards are 'necessary or appropriate' to carry out the provisions of the Bankruptcy Code." *Jove Eng'g*, 92 F.3d at 1554 (quoting 11 U.S.C. § 105(a)). Nowhere in that case does the Eleventh Circuit authorize a separate or private "action for contempt." (Doc. # 26, at 4.)

Second, Plaintiff errs by describing his claims as "contempt claims." Plaintiff clearly attempts to state independent, private causes of action. The two claims are both numbered counts in a complaint in a new and different case number from Plaintiff's bankruptcy case. And perhaps most revealing of the nature of these claims as non-contempt claims is Plaintiff's jury demand. Since Plaintiff requests a jury trial,

the relief envisaged by Plaintiff clearly cannot be a contempt of court order.  Rather, Plaintiff "demands judgment against Defendants in an amount to be determined by the jury . . . ." (Compl. ¶ 42.)  Section 105(a) states that "*[t]he court* may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *Id.*  Thus, a jury trial necessarily implicates a new private cause of action, one which does not exist.

Returning to the *McMahon* analysis, it would be difficult to justify a decision holding that compelling arbitration over a non-existent claim would create an inherent conflict between the FAA and Bankruptcy Code.  Phrased in the interrogative, how can arbitration of a bankruptcy cause of action that does not exist "seriously jeopardize the objectives of the [Bankruptcy] Code[?]" *Hays & Co.*, 885 F.2d at 1161.  At the same time, there are several reasons counseling against compelling arbitration over Plaintiff's claims.  The most obvious reason is the close relationship between these failed causes of action and what is unquestionably a core proceeding.  *See In re Nat'l Gypsum Co.*, 118 F.3d at 1063.  And, although being a core proceeding does not automatically foreclose arbitration, *see In re Elect. Mach. Enter.*, 479 F.3d at 798-99, it would seem anomalous to allow an arbitrator to construe a court's order in a contempt setting.  As a general matter, allowing arbitration of contempt proceedings would effectively strip the courts of their primary enforcement mechanism.  The

contempt power of a court has been described by the Supreme Court as "[indispensable], because [it] [is] necessary to the exercise of all other [ ] [powers]." *Jove Eng'g, Inc.*, 92 F.3d at 1553 (quoting *Chambers*, 501 U.S. at 43). More specifically, arbitration of § 105(a) contempt proceedings would inherently conflict with the Bankruptcy Code, undermining the bankruptcy court's authority to enforce its orders. Even though these causes of action are not § 105(a) contempt proceedings, granting the motions to compel arbitration would nevertheless send to arbitration a dispute that, on its merits, squarely implicates the court's contempt power.

## V. CONCLUSION

Weighing all of these considerations, the court concludes that the appropriate resolution of this dispute is to deny the motions to compel arbitration and dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted.

Accordingly, it is ORDERED:

1. Defendants' Motions to Compel Arbitration (Docs. # 8, 17) are DENIED;

2. Defendants' Motion to Dismiss (Docs. # 27) are GRANTED; and

3. Plaintiff's claims will be DISMISSED with prejudice, but without prejudice to his rights in bankruptcy court.

An appropriate judgment will be entered.

DONE this 14th day of July, 2011.

                                                      /s/ W. Keith Watkins  
                                       CHIEF UNITED STATES DISTRICT JUDGE